**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**CHATTANOOGA DIVISION**

| | |
|---|---|
| IN RE CBL & ASSOCIATES PROPERTIES, INC. SECURITIES LITIGATION | Consolidated Case No. 1:19-cv-00149-JRG-CHS |

**BRENT COWIN'S RESPONSE TO COMPETING LEAD PLAINTIFF MOTIONS AND NOTICE OF FRAUD ON THE COURT**

Pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), Brent Cowin ("Cowin") respectfully submits this response to competing Lead Plaintiff motions; and pursuant to Local Rule 83.6, adopting Tennessee's Rules of Professional Conduct, counsel provides notice of a fraud perpetrated on the Court concerning the self-styled Friedman Group's Lead Plaintiff motion (ECF Nos. 32-32-6).[1]

After reviewing the competing motions for appointment as Lead Plaintiff, Cowin recognizes that he does not possess the largest financial interest among the movants. Cowin's non-opposition shall have no effect on and is without prejudice to his rights as a member of the proposed class, including but not limited to his right to share in any recovery from the resolution of this litigation through settlement, judgment, or otherwise. However, should the Court determine that any of the other movants with larger financial interests in the outcome of this litigation are unable to serve as Lead Plaintiff, Cowin is willing and able to assume the role of Lead Plaintiff on behalf of the proposed class.

That said, to correct the record, protect Cowin's reputation, and fulfill counsel's duties as officers of the Court, Cowin and his counsel hereby alert the Court that a fraud has been perpetrated on the Court by the Friedman Group's counsel. *See* Local Rule 83.6 ("The minimum standards of professional conduct before this Court include the Rules of Professional Conduct adopted by the Supreme Court of Tennessee insofar as they relate to matters within the jurisdiction of this Court."); Tenn. R. Prof'l Conduct 3.3(h) ("A lawyer who, prior to the

---

[1]     Unless otherwise noted, the following conventions are employed herein: (1) all internal citations are omitted; (2) all emphases are added; (3) all ECF references are to the docket captioned *In re CBL & Associates Properties, Inc. Sec. Litig.*, No. 1:19-CV-00149-JRG-CHS; and (4) all ECF pin cites are to the document's native pagination, but if no native pagination is available, ECF pin cites then refer to the ECF-generated pagination.

1

conclusion of the proceeding, comes to know that a person other than the client has perpetrated a fraud upon the tribunal or otherwise committed an offense against the administration of justice in connection with the proceeding, and in which the lawyer's client was not implicated, shall promptly report the improper conduct to the tribunal[.]").  Here, as detailed in Cowin's declaration submitted herewith ("Cowin Decl.") and explained below, the law firm of Gainey McKenna & Egleston ("GME") perpetrated the following fraud on the Court: (1) GME filed with the Court a forged PSLRA Lead Plaintiff certification in Cowin's name (ECF No. 32-3 at 4); (2) GME falsely purported to represent Cowin and that Cowin authorized GME to file a Lead Plaintiff motion on his behalf seeking appointment of GME as Lead Counsel for the action; and (3) GME filed a "Notice Of Withdrawal" of the Friedman Group's motion which failed to correct the record known to GME by failing disclose the foregoing offenses even after Cowin told them that he had never signed any such documents with GME or otherwise agreed to have GME represent him in connection with the motion.

*GME Filed a Forged Sworn Certification*.  Cowin did not sign the sworn PSLRA certification that GME filed in his name.  *See* Cowin Decl. ¶¶2, 5-6; ECF No. 32-3 at 4. Although Cowin previously communicated about this case with Thomas J. McKenna, Esq. of GME, who is admitted *pro hac vice* (ECF No. 16), Cowin never signed any documents with GME and sought advice elsewhere after GME stopped responding to him.  *See* Cowin Decl. ¶¶3-4, 6.  In fact, Cowin never signed or received a copy of the certification (signed or unsigned) that GME filed on Cowin's behalf.  *See* Cowin Decl. ¶6.[2]  On the day after lead plaintiff motions were filed, Gregory Egleston, Esq. ("Egleston") of GME, who is also admitted *pro hac vice*

---

[2]    During his correspondence with McKenna, Cowin received two form PSLRA certifications, neither of which listed his transactions in CBL securities or bore his signature. Cowin Decl. ¶3.  To be clear, Cowin did not sign or type in his name in either of those certifications or any other provided by GME.  *Id.*

2

(ECF No. 14), called Cowin to suddenly discuss the case. *Id.* ¶7. During the call Cowin informed Egleston that he did not sign any documents with GME. *Id.* In response, Egleston repeatedly stated that he would send the supposedly signed documents to Cowin immediately. *Id.* To date, GME has failed to provide any such documents to Cowin because no authentically signed documents exist. *Id.* Nor can Egleston, or anyone else at GME for that matter, claim ignorance of the forged document because the typewritten signature on the certification should have alerted GME to its inauthenticity—and in any event someone at GME necessarily forged the signature by typing in Cowin's name. Indeed, the forged certification is the only certification in the Friedman Group's set of certifications that is type-written rather than hand-signed, *compare* ECF No. 32-3 at 4 (the signature on the fake Cowin certification), *with* ECF No. 32-3 at 2, 8, 13 (containing hand-signed signatures), save for George Imbrogno's certification **which lacks a signature altogether**, ECF No. 32-3 at 11.

By filing the forged certification, GME violated its duty of candor to the Court which strikes at the "heart of all legal ethics[.]" *Boca Burger, Inc. v. Forum*, 912 So.2d 561, 573 (Fla. 2005); Tenn. R. Prof'l Conduct 3.3(a)(1), (b) ("A lawyer shall not knowingly make a statement of fact or law to a tribunal" and "shall not offer evidence the lawyer knows to be false"); *accord* N.Y. R. Prof'l Conduct 3.3(a)(1), (3) ("A lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer" and shall not "offer or use evidence that the lawyer knows to be false").[3] Indeed, at least one federal court sanctioned an attorney and referred that attorney to

---

[3]     The New York Rules of Professional Conduct are occasionally cited herein because the GME attorneys who were admitted *pro hac vice* in this action are members of the New York bar, and thus well aware of such obligations. *See* Attorney Biographies, Thomas J. McKenna, http://www.gme-law.com/biomckenna.html (last visited July 30, 2019); Attorney Biographies, Gregory M. Egleston, http://www.gme-law.com/bioegleston.html (last visited July 30, 2019).

3

the state bar where the attorney knowingly filed a forged document. *See In re Leroy Washington, Debtor*, 297 B.R. 662, 664, 665 (Bankr. S.D. Fla. 2003) (sanctioning an attorney $1,004.80 where he "filed the Petition with the forged signature, knowing that it was [forged]" and "transmitting a copy of th[e] Order" to the "Florida Bar"). Additionally, GME's filing of the forged certification may have been criminal, as the Sixth Circuit has held with respect to the obstruction of justice statute, 18 U.S.C. § 1503:

> Acts that distort the evidence to be presented or otherwise impede the administration of justice are violations of 18 U.S.C. § 1503. ***The act of altering or fabricating documents used or to be used in a judicial proceeding would fall within the obstruction of justice statute if the intent is to deceive the court***.

*U.S. v. Craft*, 105 F.3d 1123, 1128 (6th Cir. 1997).

GME's conduct is especially concerning in light of the fact that Congress enacted the PSLRA to end "***abusive practices and manipulation by class action lawyers of their clients in private securities lawsuits***." *In re Enron Corp. Sec. Litig*., 206 F.R.D. 427, 441-42 (S.D. Tex. 2002) (citing H.R. Conf. Rep. No. 104–369, 104th Cong., 1st Sess. at 31 (1995), *reprinted in* 1995 U.S.C.A.A.N. 679, 730–31). In that vein, the forged certification falsely represented to the Court that Cowin, *inter alia*, retained GME and that Cowin "reviewed the complaint ***to be filed*** in this matter" and ***listed all his trades***—neither of which is true. ECF No. 32-3 at 4. Accordingly, GME should be required to answer for filing the forged certification with the Court. *See also* 15 U.S.C. § 78u-4(c)(1) (detailing the Court's obligation under the PSLRA to conduct mandatory Rule 11 reviews).

***GME Falsely Represented That Cowin Retained GME.*** GME was never authorized to file a motion for lead plaintiff on Cowin's behalf; indeed, Cowin never retained GME in the first instance. *See* Cowin Decl. ¶¶6, 7, 10. Cowin never entered into a written retainer agreement with GME, *id.* ¶¶6, 10, yet both Tennessee's and New York's Rules of Professional Conduct for

attorneys require that there be a written retainer agreement outlining, *inter alia*, "the method by which the [contingency] fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement."  Tenn. R. Prof'l Conduct 1.5(b); *see also* N.Y. R. Prof'l Conduct 1.5(c); *Gary Friedman, P.C. v. O'Neill*, 115 A.D.3d 792, 793 (N.Y. App. Div. 2014) ("Except in limited circumstances, an attorney must provide his or her client with a written letter of engagement or enter into a written retainer agreement explaining, *inter alia*, the scope of the legal services to be provided, the fees to be charged, and the expenses and billing practices.")  Thus, Cowin indisputably did not retain GME.

Furthermore, by filing a lead plaintiff motion on Cowin's behalf without his knowledge, GME deprived Cowin of his right "to make informed decisions regarding the representation." Tenn. R. Prof'l Conduct 1.4(b); N.Y. R. Prof'l Conduct 1.4(b).  Cowin was not provided with a chance to fully consider whether GME could file a motion on his behalf, let alone as part of an attorney-arranged[4] group—as Cowin had never even heard of the members of the Friedman Group until after motions were filed.  Cowin Decl. ¶6.  As a result, GME falsely asserted through the Friedman Group's motion that Cowin selected GME as proposed Lead Counsel and that he authorized GME to move on his behalf **with the Friedman Group**.

---

[4]    Courts generally decline to appoint attorney-made groups of unrelated investors as Lead Plaintiffs on the grounds that they are lawyer-driven.  *See, e.g.*, *Ansfield v. Omnicare, Inc.*, No. 11-173-DLB-CJS, 2012 WL 12924531, at *4 (E.D. Ky. Mar. 12, 2012) ("[P]ermitting unrelated groups with no pre-existing relationship to aggregate their damages for purposes of determining the movant with the greatest financial interest would be inconsistent with the intention of the PSLRA, which is to prevent lawyer-driven litigation."); *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 621-22 (S.D.N.Y. 2015) (explaining that the PSLRA's lead plaintiff provisions were intended to "transfer primary control of private securities litigation from lawyers to investors[;]" thus "[a]llowing unrelated plaintiffs to band together in order to manufacture a larger financial interest does just the opposite[—][i]t ensures that the lawyers, who are invariably the matchmakers behind such marriages of convenience, are the true drivers of the litigation[]"); *Frias v. Dendreon Corp.*, 835 F. Supp. 2d 1067, 1073 (W.D. Wash. Dec. 19, 2011) ("The emerging majority position looks askance at the appointment of a group of unrelated persons as lead plaintiff.").

***GME Attempted To Cover Up Its Fraud by Trying To Gaslight Cowin After-the-fact.***

The day after lead plaintiff motions were filed, Egleston called Cowin. *See* Cowin Decl. ¶¶7-8. During the call, Egleston tried to gaslight Cowin into believing that he had signed documents with GME. *See id.* ¶7. Cowin informed Egleston, however, that he had signed no such documents. *See id.* ¶7. Egleston replied to Cowin that he would send him the signed documents immediately—tellingly, Cowin has yet to receive the purported documents. *Id.* ¶7. In a last ditch effort to conceal the fraud, Egleston next attempted to tortiously interfere with Cowin's attorney-client relationship with the Faruqi & Faruqi, LLP (the "Faruqi Firm") during the call. *See id.* ¶8.[5] Egleston misleadingly told Cowin that he would lose his motion if he stayed with the Faruqi Firm, implying that Cowin still had a chance to be appointed Lead Plaintiff if he fired his attorneys at the Faruqi Firm and went with GME. *See id.* Egleston made no mention of the forthcoming "withdrawal" for the Friedman Group that GME filed the next day. *See* Cowin Decl. ¶8; ECF No. 38.

***The Friedman Group's Subsequent "Withdrawal" Was In Furtherance of GME's Fraud On The Court***. Lastly, instead of correcting the record based on statements made by Cowin during his call with Egleston, GME filed a "Notice of Withdrawal Of [the Friedman Group's] Motion." *See* Cowin Decl. ¶7. The "withdrawal" misleadingly states that Cowin "***will be*** represented by the law firm of Faruqi & Faruqi, LLP in connection with all matters" in the case. ECF No. 38 at 1. GME failed to disclose that Cowin ***was always*** represented by the Faruqi

---

[5] The following elements constitute a tortious interference claim: "[1] the existence of a valid contract between plaintiff and a third party, [2] defendant's knowledge of the contract, [3] defendant's intentional procurement of a breach of the contract without justification, [4] actual breach of the contract, and [5] resulting damages." *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1374 (N.Y. 1996).

Firm, and that he *was **never*** represented by GME.  *See* Cowin Decl. ¶9.  GME likewise failed to disclose that Cowin did not sign the PSLRA certification that GME filed.  *Id.* ¶¶6, 7, 10.  GME's failure to disclose these facts is especially egregious given that Cowin informed Egleston during their call that he never signed any documents with GME and that Cowin had selected the Faruqi Firm to represent him.  *Id.* ¶7, 9.  GME's withdrawal therefore violates GME's "continuing duty of candor[.]"  *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997) (noting that Fed. R. Civ. P. 11 imposes upon attorneys "a continuing duty of candor"); *see also* Tenn. R. Prof'l Conduct 3.3(g) ("A lawyer who, prior to conclusion of the proceeding, comes to know that the lawyer has offered false tangible or documentary evidence shall withdraw or disaffirm such evidence without further disclosure of information protected by RPC 1.6."); *accord* N.Y. R. Prof'l Conduct 3.3(a)(1) ("A lawyer shall not knowingly . . . fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]").

In conclusion, Cowin does not oppose the competing motions for appointment as Lead Plaintiff for those with a larger financial interest in the litigation.  With respect to the misconduct detailed herein, Cowin respectfully requests that the Court take whatever action it deems appropriate consistent with the Court's duties.

Dated: July 30, 2019                                Respectfully submitted,

<u>/s/ *Richard W. Gonnello*</u>
Richard W. Gonnello

**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: rgonnello@faruqilaw.com

*Attorneys for Proposed Lead Plaintiff Brent Cowin*
*and Proposed Lead Counsel for the putative Class*

7

Christopher T. Cain, BPR #19997
**SCOTT & CAIN, PLLC**
606 W. Main Street, Suite 222
Knoxville, TN  37902
Telephone: 865-525-2150
Facsimile: 865-525-2120
Email: cain@scottandcain.com

*Proposed Liaison Counsel for the putative Class*

## CERTIFICATE OF SERVICE

I, Richard W. Gonnello, hereby certify that I caused a copy of the foregoing to be filed electronically via the Court's electronic filing system.  Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Dated: July 30, 2019

s/ *Richard W. Gonnello*
Richard W. Gonnello

8